# Exhibit 1

**LAW OFFICES OF MICHAEL M. COHEN**
275 Walton Street, Suite CB
Englewood, New Jersey 07631
347.921.2804 Phone | 347.921.2805 Facsimile
MCOHEN@YOURLITIGATIONTEAM.COM

| | |
|---|---|
| **HEROD'S STONE DESIGN,** | **SUPERIOR COURT OF NEW JERSEY LAW DIVISION** |
| *Plaintiff* | |
| - a g a i n s t - | **HUDSON COUNTY** |
| **MEDITERRANEAN SHIPPING COMPANY S.A.,** | DOCKET NO. **HUD-L- 0983 -18** |
| *Defendant* | **Summons** |

From:   The State of New Jersey
To:      The Defendant(s) Named Above

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

*Michelle Smith*

Clerk of the Superior Court

Dated: March 12, 2018

Entity being served:     **Mediterranean Shipping Company S.A.**
                                      420 Fifth Avenue
                                      New York, New York 10018

**LAW OFFICES OF MICHAEL M. COHEN**
275 Walton Street, Suite CB
Englewood, New Jersey 07631
201.227.0881 Phone | 201.227.0882 Facsimile
MCOHEN@YOURLITIGATIONTEAM.COM
*Attorneys for Plaintiff, Herod's Stone Design*

---

| | |
|---|---|
| **HEROD'S STONE DESIGN,** | **SUPERIOR COURT OF NEW JERSEY LAW DIVISION** |
| *Plaintiff* | |
| - a g a i n s t - | **HUDSON COUNTY** |
| | DOCKET NO. **HUD-L- 0983 -18** |
| **MEDITERRANEAN SHIPPING COMPANY S.A.,** | **Complaint** |
| *Defendant* | |

Plaintiff, HEROD'S STONE DESIGN ("Herod's" or "Plaintiff') with its principal place of business located in the city of Jersey City, County of Hudson and State of New Jersey, by and through its attorneys, the Law Offices of Michael M. Cohen, by way of Complaint, alleges upon information and belief as follows:

## INTRODUCTION

1.     Plaintiff Herod's is a marble, tile and stone supplier and installer which purchases its services from around the world, and sells its services and services throughout the United States.

2.     Mediterranean Shipping Company S.A. (hereinafter "MSC" or "Defendant") is a global shipping company that moves freight around the world through its network of global and national offices, and offers its services directly or indirectly to the public for sale.

3.   Plaintiff's Complaint herein seeks recovery for damage and loss to a shipment of marble (hereinafter also referred to as the "Cargo" "Shipment" or "Container") caused by defendants' breaches of contract and torts. A true and accurate copy of the bill of lading is annexed hereto as Exhibit A.

## PARTIES

4.   At all material times, Plaintiff Herod's was and is a corporation organized and existing by virtue of the laws of New Jersey with an office and place of business located at 1600 Tonnelle Ave, North Bergen, NJ 07047. Herod's is a "consumer" under New Jersey law which defines a "person" – under consumer law - as including "any natural person or his legal representative, **partnership**, **corporation**, **company**, trust, **business entity** or association." N.J.S.A. 56:8-1(d)(Emphasis added).

5.   Plaintiff was the shipper, consignee, and/or owner of the Cargo, and/or otherwise had a proprietary interest in the Cargo and brings this action on its own behalf and on behalf of all parties who are or may become interested in the subject shipment, as their respective interests may ultimately appear, and Plaintiff is entitled to maintain this action.

6.   At all material times, Defendant, MSC was and is a corporation organized and existing by virtue of the laws of a foreign state with an office and place of business located at 420 Fifth Avenue, New York, New York 10018 and at all relevant times, was and is still doing business within the jurisdiction of New Jersey as a common carrier of goods for hire. MSC regularly avails itself of the privilege of doing business in New Jersey and maintains ports within the waters of this state.

7. MSC authorizes Mediterranean Shipping Company USA, Inc. ("MSC USA"), a corporation organized and existing under the laws of the state of New York, with a principal place of business at 420 Fifth Avenue, New York, New York 10018, to accept service of legal proceedings issued against it.

8. MSC is a "seller" as described in N.J.S.A. 56:12-15 since it offers its services directly or indirectly to the public for sale.

9. MSC and Herod's had a contractual relationship.

## JURISDICTION AND VENUE

10. Jurisdiction is proper in this Court since Plaintiff is a New Jersey business which resides in this county.

11. This Court has jurisdiction over the Defendant named herein because Defendant has sufficient minimum contacts with New Jersey and/or otherwise intentionally avails itself of the laws and markets of New Jersey, through the promotion, sale, marketing and distribution of its services in New Jersey, to render the exercise of jurisdiction by the New Jersey courts permissible.

12. This Court has personal jurisdiction over Defendants because they conduct substantial business in New Jersey, such that Defendants have significant; continuous and pervasive contacts with the State of New Jersey. In fact, MSC offers its services directly or indirectly to the public for sale.

13. Venue is proper in this Court since Plaintiff is a New Jersey business which resides in this county.

## A BRIEF INTRODUCTION TO GLOBAL SHIPPING

14. When a New Jersey consumer wishes to ship something from overseas to the United States, he must use the services of a number of Agents.

15. The Consumer must first enlist the services of a U.S. shipping agent (the U.S. Agent") who has relationships with international shippers wordwide.

16. The U.S. shipping agent then contacts his agent in the foreign country (the Foreign Agent") who contracts the services of a local global shipper. The Foreign Agent then arranges to have the cargo tendered to the global shipper who ultimately delivers the cargo to the New Jersey consumer.

17. The relevance of this is that the global shipper often takes advantage of the fact that the Foreign Agent with whom they are exclusively dealing often is not particularly savvy with either the English language or contracts. In fact, the New Jersey consumer often never actually receives or signs any Terms and Conditions.

## FACTUAL ALLEGATIONS

18. Herod's, through its U.S. shipping agent, Go Forward Freight Services ("GFFS"), contracted with their Foreign Shipping Agent, Parisi Grand Logistics, LTD ("Parisi") who hired MSC to deliver cargo from Shanghai to New York, Master Bill of Lading ("MBL") SHASEA48696 originating in CHONGQING, China.

19. Herod's paid $6,451.00 in total to MSC for the transport of the cargo.

20. The Sea Waybill number was MSCUYS895277, and the cargo container number was TTNU3373958.

21. The Cargo shipped aboard a ship identified as DIHA013-0003E.

22. Once the cargo container arrived in California, MSC arranged to have it transferred to New York by rail via to BNSF Railway Co., a subcontractor of MSC.

23.     According to Jacob Romero, who is an employee of MSC at their West Coast Import Intermodal division, prior to being transferred to rail, the cargo was examined on June 14, 2016, at an "Exam Site" in California where its condition was documented in pictures. True and accurate copies of these pictures are annexed hereto as Exhibit B.

24.     MSC did not discover, or report, any issues with, or damage to, the cargo at the exam site. In other words, at this juncture, the cargo had already travelled 7,170 miles from Chongqing, China to Long Beach, California without any incident.

25.     After being released from the Exam Site, MSC – using its own employees and trucks – transported the cargo to BNSF Railway Co., with which MSC subcontracted to transport the cargo along the rail route of the transport.   MSC's employees split the container, TTNU3373958, into two containers, and amended the MBL, adding container CXDU2083664 for the rail portion of the cargo transport.

26.     According to MSC, its own truckers performed the split of the containers and documented such with before and after pictures of the cargo. True and accurate copies of these pictures are annexed hereto as Exhibit C.

27.     The two containers, TTNU3373958 and CXDU2083664 were transported to New York and delivered to the plaintiff, on or about June 30, 2016, where upon inspection it was determined that all the materials were damaged in transit. True and accurate copies of pictures taken by Herod's upon delivery are annexed hereto as Exhibit D.

**Herod's Submits a Claim to MSC**

28.     Herod's, through its shipping agent GFFS, notified MSC of the damage and filed a prompt claim for such with MSC.

29. The items were delivered by MSC on or about June 30, 2016, and Herod's submitted its claim to MSC on or before July 6, 2016.

30. In fact, on July 6, 2016, Antonietta Di Buono of MSC acknowledged the claim via email.

31. Herod's provided extensive documentation of the damages including photos that detailed the damage to the entire cargo. Specifically, the photos showed that the tile had cracked and chipped, and that the shipping crates appeared damaged themselves in transit.

32. The pictures of the cargo as delivered to the Plaintiff depicted the condition as significantly different from the condition as documented at the Exam Site.

33. Herod's asserted to MSC that the damage must have occurred at some point after the cargo safely arrived in California where it was inspected at the Exam Site, and after, or during the process whereby, the Cargo was split into two containers by MSC and transported to New York.

34. MSC responded requesting the following:

- the estimated claim amount;
- pictures showing damage to the container;
- formal statement of claim;
- commercial invoice and packing list;
- colored pictures of the damaged cargo;
- a duly signed subrogation letter or letter of authority authorizing such third party to pursue recovery of the claim, negotiate settlement, receive settlement monies and sign the receipt and claim release form;
- **destruction certificate** (to prove that the cargo has been disposed of)

35.    Herod's responded providing everything that MSC requested.

36.    Herod's claim was for \$288,000.

## MSC Denies Herod's Timely Filed Claim

37.    After directing Herod's to either destroy or dispose of the cargo, on or about

July 6, 2016, Antonietta Di Buono, a Cargo Claims Supervisor for MSC, denied the claim

for cargo damage.

38.    MSC wrote, in support of their denial:

> it seems damage is due to improper blocking and securing of
> the cargo inside the container for which MSC cannot be
> deemed liable

39.    MSC's denial was arbitrary and capricious since the very fact that the cargo

arrived in California, after being transported 7,170 miles from Chongqing, China to Long

Beach, California without any incident is evidence alone that the cargo was properly

packaged and secured at the shipping point.

40.    Herod's asserted that the very fact that the cargo was inspected at the Exam

Site in California and found not to be damaged, creates a *res ipsa loquitur* presumption

that the damage occurred solely as the result of negligence on the part of MSC at some

point after the inspection at the Exam Site and before delivery to the Plaintiff.

41.    In fact, the evidence that was before MSC in determining the claim proved

that the damage to the cargo occurred either in the process of, as a result of and/or

subsequent to MSC's truckers splitting the original container into two containers.

Moreover, it is now evident that MSC failed to properly secure the split cargo in their

respective containers for the rail leg of the transport.

42.     Nevertheless, MSC continued the appearance that it was still processing

the claim and misled Herod's by continuing to ask for an endless list of continued requests

related to what Herod's was lead to believe was the continued evaluation of its claim.

43.     Ultimately, after delaying Plaintiff and running it on a purposeful and

calculated wild-goose-chase, MSC wrote to plaintiff on Sep 26, 2017, stating that MSC's

Terms & Conditions contained a provision limiting the Plaintiff to a one-year statute of

limitations, and that at this point the claim was "time barred." Specifically, MSC wrote:

> With reference to the matter in caption, I regret to inform you
> that the claim in caption is in our records time barred. MSC
> shall consequently close this file.
>
> In fact, a one year statute of limitation applies, starting from
> the date the cargo was or should have been delivered. Before
> the expiration of such deadline, the claimant may elect either
> to ask MSC to grant a time extension for negotiating the claim
> further or to file a lawsuit.
>
> Since neither of this action has been taken, the statute of
> limitation expired on last June 17-2017. Thus, we consider
> this matter as being definitely time barred as from this date.
>
> For easier reference we refer you to clause 10.2 of MSC bill
> of lading.
>
> ---Written strictly without prejudice and without admission of
> liability---
>
> Best regards
> Maria Jose Pantosin
> Cargo Claims
> MSC MEDITERRANEAN SHIPPING COMPANY (USA) INC.

44.     Plaintiff did in fact submit its claim within the one year time-period, in

actuality submitting its claim within a week of receiving the goods, however MSC used

unconscionable, deceptive and calculated tactics in purposely delaying the Plaintiff in an effort to defraud it of its rightful reimbursement.

45.     Despite the heightened duties of a *common carrier*, MSC breached such duties and acted carelessly with Plaintiff's cargo and its rights thereunder.

46.     Despite its duties to honor its obligations as a common carrier, MSC arbitrarily denied the claim for cargo damage.

## MSC'S TERMS & CONDITIONS

47.     The New Jersey Supreme Court, in its seminal case of *Atalese v. US Legal Serv. Group*, 219 N.J. 430 (2014) explained that where exculpatory provisions, such as forum selection clauses and arbitration clauses, conflict with New Jersey's public policy for enforcing CFA claims, such provisions must ... The Court explained:

> Mutual assent requires that the parties have an understanding of the terms to which they have agreed. "An effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those rights." . . . The requirement that a contractual provision be sufficiently clear to place a consumer on notice that he or she is waiving a constitutional or statutory right **is not specific to arbitration provisions**. Rather, under New Jersey law, **any contractual "waiver-of-rights provision must reflect that [the party] has agreed clearly and unambiguously"** to its terms
>
> No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights. It is worth remembering, however, that every "consumer contract" in New Jersey must "be written in a simple, clear, understandable and easily readable way." N.J.S.A. 56:12-2.

48.     MSC's Terms & Conditions do not clearly and unambiguously inform the consumer that they are waiving rights that they would otherwise have.

49.     MSC's fine-print Terms & Conditions are not only illegible, but also contain numerous disclaimers and exclusions that purport to impose illegal exculpatory and other

such provisions upon all New Jersey users of its services, and exclude certain legal duties and responsibilities Defendant owes its consumers and prospective consumers.

50. Moreover, Plaintiff never was given a copy of the Terms and Conditions, and it is questionable if the Foreign Shipping Agent was ever presented with a copy of the Terms & Conditions. In any event, it is more than likely that the Chinese speaking Parisi did not clearly understand the Terms and Conditions.

51. The Terms & Conditions more egregiously purports to nullify warranties and conditions that are guaranteed to New Jersey consumers, thus in violation of the Truth-In-Consumer Contract, Warranty and Notice Act (The "TCCWNA") N.J.S.A. 56:12-14 which prohibits such warranty exclusions.

52. Defendant uses its unfair and one-sided provisions of its "Terms & Conditions" in a manner which makes it virtually impossible for its customers to seek redress from Defendant's negligent actions, and is a specific violation of statutory and common law standards and New Jersey's TCCWNA, N.J.S.A. 56:12-14 et seq.

53. The sections of MSC's Terms & Conditions which violate the TCCWNA, and which inherently contradict the public policies of New Jersey are, in relevant part:

> 4.2 The Merchant undertakes that no claim or allegation whether arising in contract, bailment, tort or otherwise shall be made against any servant, agent, or Subcontractor of the Carrier which imposes or attempts to impose upon any of them or any Vessel owned or chartered by any of them any liability whatsoever in connection with the Goods or the carriage of the Goods whether or not arising out of negligence on the part of such Person. If any such claim or allegation should nevertheless be made, the Merchant agrees to indemnify the Carrier against all consequences thereof.
>
> 4.4 The Merchant further undertakes that no claim or allegation in respect of the Goods shall be made against the Carrier by any Person which imposes or attempts to impose upon the Carrier any liability whatsoever in connection with

the Goods or the carriage of the Goods other than in accordance with the terms and conditions of this Bill of Lading, whether or not arising out of negligence or misdelivery on the part of the Carrier, and if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof.

## 8. SCOPE OF VOYAGE, DELAY, CONSEQUENTIAL DAMAGES

. . . If the Carrier should nevertheless be held legally liable for any such direct or indirect or consequential loss or damage caused by such alleged delay, such liability shall in no event exceed the Freight paid for the carriage.

## 10. NOTICE OF CLAIMS, TIME BAR AND JURISDICTION

10.2 Time bar - In any event, the Carrier shall be discharged from all liability if suit is not commenced within one (1) year after delivery of the Goods or the date that the Goods should have been delivered for claims related to loss or damage during the Port-to-Port carriage, and for claims related to loss or damage during Inland Transport the shorter of nine (9) months or any time limit provided for by any applicable international convention, national law, regulation or contract by virtue of clauses 5.2.2 (a) or (b).

10.3 Jurisdiction - It is hereby specifically agreed that any suit by the Merchant, and save as additionally provided below any suit by the Carrier, shall be filed exclusively in the High Court of London and English Law shall exclusively apply, unless the carriage contracted for hereunder was to or from the United States of America, in which case suit shall be filed exclusively in the United States District Court, for the Southern District of New York and U.S. law shall exclusively apply. The Merchant agrees that it shall not institute suit in any other court and agrees to be responsible for the reasonable legal expenses and costs of the Carrier in removing a suit filed in another forum. The Merchant waives any objection to the personal jurisdiction over the Merchant of the above agreed fora.

In the case of any dispute relating to Freight or other sums due from the Merchant to the Carrier, the Carrier may, at its sole option, bring suit against the Merchant in the fora agreed above, or in the countries of the Port of Loading, Port of Discharge, Place of Delivery or in any jurisdiction where the Merchant has a place of business.

54.    The TCCWNA, N.J.S.A. 56:12-14 *et seq.* states in relevant part:

> No seller, lessor, creditor, lender or bailee shall in the course
> of his business offer to any consumer or prospective
> consumer or enter into any written consumer contract or give
> or display any written consumer warranty, notice or sign after
> the effective date of this act **which includes any provision
> that violates any clearly established legal right of a
> consumer or responsibility of a seller**, lessor, creditor,
> lender or bailee as established by State or Federal law at the
> time the offer is made or the consumer contract is signed or
> the warranty, notice or sign is given or displayed.

55.    The Legislature[1] foresaw that even though such provisions were ultimately

unenforceable, such by design "deceive[d] a consumer into thinking that they are

enforceable," resulting in consumer fraud as such consumers abandoned any attempts

to enforce their rights thinking that such rights were lost.

56.    MSC's Terms and Conditions violate the TCCWNA by creating exculpatory

provisions that are unconscionable, including purporting to create a one-year statute of

limitations when New Jersey allows consumers a 6-year statute of limitation.

## NEW JERSEY'S CONSUMER FRAUD ACT N.J.S.A. 56:8-1

57.    New Jersey's Consumer Fraud Act (the "CFA"), N.J.S.A. 56:8-1 *et seq.*, has

been adopted to control the various forms of consumer abuse rampant among

companies, and is among the toughest consumer protection statutes in the Country. In

fact, the New Jersey Supreme Court has recognized that the provisions and remedied of

the CFA are intended to be punitive.[2]

58.    The CFA provides, in relevant part:

---

1    Sponsors' Statement, Statement to Assembly Bill No. 1660 (May 1, 1980).

2    In *Wanetick v. Gateway Mitsubishi*, 163 N.J. 484 (2000) the New Jersey Supreme Court stated that
the "Act's provisions providing for trebling of damages and awarding of counsel fees constitute a punitive
measure" and "We think the punitive aspect of the Consumer Fraud Act is necessary information for the
jury to have in executing its function."

**56:8-1 Definitions.**

(c) The term "merchandise" shall include any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale;

(d) The term "person" as used in this act shall include any natural person or his legal representative, partnership, corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestuis que trustent thereof;

**56:8-2. Fraud**

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; . . .

**56:8-2.11. Violations; liability**
Any person violating the provisions of the within act shall be liable for a refund of all moneys acquired by means of any practice declared herein to be unlawful.

**56:8-19. Action or counterclaim by injured person; recovery of treble damages and costs**
Any person **who suffers any ascertainable loss of moneys** or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefore in any court of competent jurisdiction. **In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest**. In all actions under this section, including those brought by the Attorney General, **the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit**.

(Emphasis added).

59.    The CFA defines a "person" as including "any natural person or his legal

representative, partnership, **corporation, company, trust, business entity or**

**association**." N.J.S.A. 56:8-1(d)(Emphasis added).

60. The CFA defines "merchandise" as including "services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1(c).

61. New Jersey courts have held that under this broad definition of "person" a corporation may maintain an action for a violation of the CFA.[3]  In so finding, New Jersey Courts have made it clear that even small businesses like Herod's are entitled to the protections from consumer abuse from companies like MSC that cater to the consumer market. Accordingly, Herods is entitled to pursue MSC under the CFA as MSC is engaged in the sale of merchandise to the public at large.[4]

62. The Supreme Court of New Jersey has mandated that Courts examine a CFA case with indulgence and that it seek to extend the provisions of the Act where it sees fit to achieve consumer justice.[5]

63. The Defendants violated the CFA by denying Herd's timely claim, by then purposely misleading Herod's for over a year – all along directing Herod's to discard or destroy the cargo – only to finally tell Herod's that there was a buried clause with a one-year limit on claims that it claimed barred Herod's from pursuing its valid claim. Such acts

---

3    See, e.g., *Coastal Group, Inc., v. Dryvit Systems, Inc.*, 274 N.J. Super. 171, 179-180 (App. Div. 1994)(" we held that the protections of the Consumer Fraud Act extend to the purchase of merchandise for use in business operations"); *Perth Amboy Iron Works, Inc. v. American Home Assurance Co.*, 226 N.J. Super. 200, 209 n. 7 (App. Div. 1988), *aff'd*, 118 N.J. 249 (1990); *Hundred E. Credit Corp. v. Eric Schuster Corp.*, 212 N.J. Super. 350, 354-357 (App. Div. 1986), *cert. denied*, 107 N.J. 60 (1986)

4    The court in *Princeton HealthCare System v. Netsmart New York, Inc.*, No. A-3533-10T4 (App. Div. October 21, 2011) held that the CFA applies to "sales of merchandise," which is defined to include "any objects, wares, goals, commodities, services or anything offered, directly or indirectly to the public for sale." See, also, *Kugler v. Romain*, 58 N.J. 522, 536, 279 A.2d 640 (1971) (holding that the CFA is directed primarily at "deception, misrepresentation and unconscionable practices engaged in by professional sellers seeking mass distribution of many types of consumer goods"); *539 Absecon Boulevard, L.L.C. v. Shan Enters. Ltd. P'ship*, 406 N.J.Super. 242, 273-80, 967 A.2d 845 (App. Div. 2009), *certif. denied*, 199 N.J. 541, 973 A.2d 945 (2009)("[i]t is the character of the transaction, not the identity of the purchaser, which determines whether the CFA is applicable.").

5    The New Jersey Supreme Court in *Printing Mart v. Sharp Electronics*, 116 N.J. 739, 746 (1989) stated that "The examination of a [CFA] complaint's allegations of fact required by the aforestated principles should be one that is at once painstaking and undertaken with a generous and hospitable approach."

were (i) an unconscionable commercial practice, (ii) deception, (iii) fraud, (iv) false pretense, (v) misrepresentation, and (vi) the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment.

64.   The Defendants violated the CFA by employing unethical business tactics by denying coverage when they knew that it was a valid claim.  Such act was (i) an unconscionable commercial practice, (ii) deception, (iii) fraud, (iv) false pretense, (v) misrepresentation, and (vi) the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment.

## TRUTH-IN-CONSUMER CONTRACT, WARRANTY AND NOTICE ACT

65.   N.J.S.A. 56:12-15 provides in relevant part:

> No seller ... shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign ... which includes any provision that violates any clearly established legal right of a consumer ... as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

66.   The TCCWNA is a remedial consumer statute and by passing it, the Legislature's intent was to expand rather than constrict the consumer's rights.[6]

67.   The TCCWNA's legislative history states, in pertinent part: "[f]ar too many consumer contracts, warranties, notices and signs contain provisions which clearly violate the rights of consumers. Even though these provisions are legally invalid or unenforceable, their very inclusion in a contract, warranty, notice or sign deceives a

---

6      See, e.g. Reves v. Ernst Young, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993)(discussing Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c)); Perez v. Rent-a-Center, Inc., 186 N.J. 188, 892 A.2d 1255 (2006) (noting that remedial statutes like the Retail Installment Sales Act ("RISA"), N.J.S.A. 17:16C-1 to -61 should be liberally construed to achieve their salutary aims).

consumer into thinking that they are enforceable and for this reason the consumer often fails to enforce his rights." See exhibit F, A-1660, p. 2 (as introduced May 1, 1980).

68.     Moreover, the sponsor's statement in the TCCWNA's legislative history states that the Legislature enacted TCCWNA to strengthen the CFA.[7] See Exhibit F, Sponsor's Statement to A-1660 (as introduced May 1, 1980).

69.     The CFA applies to businesses as well as individuals, and the TCCWNA likewise was enacted to provide an extension to such protection. See FN3, below.

70.     The TCCWNA prohibits companies from burying "terms-and-conditions" and other warranty documents on their website which limit a consumer's protections,

71.     MSC has used the terms of its online warranty to purport to be a binding agreement between Defendant and the Plaintiff.

72.     At all relevant times, the representatively binding provisions in the online warranty imposed illegal conditions upon MSC's customers. Despite clear law to the contrary, Plaintiff, upon purchase of goods from MSC was purportedly forced to forego virtually any claim under tort or negligence arising from their use of MSC's services.

73.     All of these provisions violate the TCCWNA.

74.     New Jersey law specifically prohibits the type of exculpatory clause contained in Defendant's "Terms & Conditions."

75.     Exculpatory provisions are disfavored by New Jersey law because "they undermine one purpose of tort law, which is to deter careless behavior by a party in the best position to prevent injuries in the first place." See Martinez-Santiago v. Public

_____

7     When interpreting a statute, the Court considers the entire legislative scheme of which the statute under review is a part. Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 129 527 A2d 1368 (1987). "Of the various materials that may reveal legislative intent, one of the most instructive is a statement by the sponsor of the act." Panzino v. Cont'l Can Co., 71 N.J. 298, 302, 364 A.2d 1043 (1976).

*Storage,* 38 F.Supp.3d 500, 512-513 (D.N.J. 2014) ("[h]ere, the exculpatory provision purports to hold [defendant] harmless for most losses incurred by consumers, except those that are the direct result of [defendant's] fraud or willful conduct. Although Plaintiff plausibly pleads that such a broad exculpatory provision is not permitted under New Jersey law, the provision purports to be enforceable in the lease agreement. Plaintiff states a valid claim that this is the kind of provision that TCCWNA was designed to address."); *see also Marcinczyk v. State of NJ Police Training Comm 'n,* 203 N.J. 586, 593 (2010).

76.    New Jersey consumer protection laws, including the TCCWNA, are designed to protect consumers from the type of unconscionable and illegal provisions contained in Defendant's online warranty as set forth above.

77.    Plaintiff therefore brings the statutory claim herein to halt Defendant's continued use of the illegal language in its Terms and Condition, and to impose those remedies provided for in the TCCWNA.

## FIRST CAUSE OF ACTION
### (New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.)

78.    Plaintiff incorporate by reference all preceding paragraphs as if fully set forth herein.

79.    Defendants damaged Plaintiffs goods and were responsible to reimburse Plaintiff for such damage.

80.    Plaintiff submitted a timely claim for the damage within 7 days of receiving the damaged goods.

81.    MSC initially blamed the damage on the Plaintiff stating that the items were not packaged properly, however, the photographic evidence that was documented at the

Exam Site proved that the items survived the ocean journey without any incident prior to the Defendant transferring the container and splitting it into two containers for the rail portion of the trip.

82. MSC also used the unconscionable commercial practice of directing the Plaintiff to submit a "destruction certificate" to MSC along with evidence that the cargo had been destroyed even though MSC knew that it was directing the Plaintiff to destroy any evidence that could assist it in its claim should MSC deny.

83. MSC also purposely ran Plaintiff in circles for a year intentionally planning on claiming that the claim was then time-barred.

84. Pursuant to the CFA N.J.S.A. 56:8-2, MSC actions constitute an unconscionable commercial practice.

85. Pursuant to the CFA N.J.S.A. 56:8-2, MSC actions constitute deception.

86. Pursuant to the CFA N.J.S.A. 56:8-2, MSC actions constitute fraud.

87. Pursuant to the CFA N.J.S.A. 56:8-2, MSC actions constitute a false pretense.

88. Defendants also violated the CFA by unreasonable denying their warranty claim.

89. Defendants Terms & Conditions also violate the CFA which requires that contractual terms must "be written in a simple, clear, understandable and easily readable way." N.J.S.A. 56:12-2. Pursuant to the CFA, the Terms & Conditions did not clearly and unambiguously signal to plaintiff that they were surrendering their New Jersey consumer rights.

90. Pursuant to the CFA N.J.S.A. 56:8-2.11, Herod's is entitled to a refund for the services.

91.   Pursuant to the CFA N.J.S.A. 56:8-19, Herod's is entitled to treble damages,

attorney's fees, filing fees and reasonable costs of suit

### SECOND CAUSE OF ACTION
### Violations of the New Jersey Truth-in-Consumer
### Contract, Warranty and Notice Act
### N.J.S.A. 56:12-14, et seq.

92.   Plaintiff incorporate by reference all preceding paragraphs as if fully set forth

herein.

93.   The TCCWNA declares "No seller ... shall in the course of his business offer

to any consumer or prospective consumer or enter into any written consumer contract or

give or display any written consumer warranty, notice or sign after the effective date of

this act which includes any provision that violates any clearly established legal right of a

consumer or responsibility of a seller ... as established by State or Federal Law at the

time the offer is made or the consumer contract is signed or the warranty, notice or sign

is given or displayed." N.J.S.A. 56:12-15.

94.   At all relevant times, Defendant's Terms & Conditions constituted a

consumer contract displayed and/or offered by seller to consumers and/or prospective

consumers.

95.   At all relevant times, the online Terms & Conditions as detailed above,

included provisions that violated the legal rights of consumers and prospective consumers

and/or responsibility of the seller.

96.   First, at all relevant times Defendant included in its Terms & Conditions,

language as noted herein that purported to disclaim liability for virtually any claim under

tort or negligence arising from their use of their services.

97.    Such exculpatory provisions are disfavored by New Jersey law because "they undermine one purpose of tort law, which is to deter careless behavior by a party in the best position to prevent injuries in the first place." See, *Martinez-Santiago*, supra, 38 F.Supp.3d at 512-13. Moreover, at all relevant times this provision purported to deprive Plaintiff of its right to a cause of action for any unreasonable damages created by Defendant or its non-conforming product.

98.    Likewise, the provisions purported to absolve Defendant of its legal responsibility to exercise due care and refrain from creating an unreasonable risk of damage to consumers. Such a provision is contrary to well established principles of common law and contrary to the TCCWNA.

99.    Moreover, the Terms & Conditions purport to bar Plaintiffs from seeking punitive damages for any and all harm caused by Defendant. Such a provision is contrary to the NJPDA. This provision purports to absolve Defendant of its legal obligation to refrain from maliciously and/or wantonly and/or willfully creating an unreasonable risk of damage to consumers. Likewise, the provision purports to bar Plaintiffs who adequately plead and demonstrate punitive damages to be applicable from pursuing same. This provision violates the TCCWNA.

100.    Plaintiff reserves the right to identify additional provisions of the law violated by Defendant as further investigation and discovery warrant.

### THIRD CAUSE OF ACTION
### FOR PUNITIVE DAMAGES

#### (*Under the Punitive Damages Act N.J.S.A. 2A:15-5.9*)

101.   Defendants conduct in violating New Jersey's consumer protection laws is unconscionable.

102.   Upon information and belief, thousands of New Jersey consumers have been deprived fair warranty coverage as a result of MSC's violations of the TCCWNA.

103.   The Defendant' conduct was a conscious and willful disregard for Herod's's rights and welfare, and was a willful and wanton disregard of Herod's consumer rights which are guaranteed under New Jersey law.

104.   The exculpatory provisions of the online warranty were designed to dupe New Jersey consumers into abandoning their rights and not pursuing rights and coverages which they did not know was guaranteed notwithstanding the unconscionable warranty.

105.   Upon information and belief, thousands of New Jersey MSC customers have been forced to give up legal rights they would have otherwise had notwithstanding MSC's violative Terms & Conditions.

106.   As a direct and proximate result of the willful, wanton, neglectful and/or reckless conduct of the Defendant, the Plaintiff has sustained damages as set forth above.

## FOURTH CAUSE OF ACTION
### *(Breach of Contract)*

107. Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth.

108. MSC and plaintiff had a contract for the transportation of cargo.

109. Pursuant to the contract entered into between the parties, MSC owed a contractual and statutory duty to the Plaintiff, to carry, bail, keep and care for, protect and deliver the Plaintiffs cargo in the same good order and condition as at the time said defendants first accepted custody and control of the goods.

110. MSC breached the contract by splitting Plaintiff's container and breaking his merchandise, and breached their respective contractual and statutory duties by failing to properly care for, bail and protect the Plaintiffs cargo in the same good order and condition as at the time said defendants first accepted custody and control of the goods .

111. MSC's breach was not excused.

112. Herod's had not breached any portion of the contract and had otherwise fully performed its obligations.

113. Herod's suffered damage as a result of MSC's breach.

114. Herod's damage was caused exclusively by MSC's breach and such damage was the foreseeable consequence of MSC's breach.

115. Herod's damages were direct, consequential, and incidental.

## FIFTH CAUSE OF ACTION
### (Negligence, Recklessness, and/or Willful Misconduct)

116. Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth.

117. At all material times defendant, MSC, had a nondelegable duty to properly handle, secure, seal, carry, stow, lash, protect and care for the Shipment.

118. The damage and loss of the Shipment was caused exclusively by defendant's negligence, recklessness, wanton neglect, and willful misconduct in that defendant, its agents, servants, sub-carriers, participating carriers, subcontractors, terminal operators, stevedores, warehousemen and employees failed to properly handle, stow, lash, carry, protect and care for the Shipment.

119. As a proximate result of the foregoing plaintiff and those on whose behalf it sues has sustained damages, no part of which has been paid although duly demanded.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully request that this Court enter a judgment in their favor, and against the Defendant for:

a) Refund of all fees paid to the Defendants;

b) **Treble damages** in the amount of $864,000 (3 x $288,000) and **attorney's fees** under New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.;

c) Punitive damages of $350,000 under the New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.9, et seq.;

d) Prejudgment and Post-judgment interest;

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, the Court is advised that Michael M. Cohen, Esq., is hereby designated as trial counsel.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues involved herein pursuant to R. 4:35-1.

**LAW OFFICES OF MICHAEL M. COHEN**
Attorneys for Plaintiff

Michael M. Cohen
**LAW OFFICES OF MICHAEL M. COHEN**
275 Walton Street
Englewood, New Jersey 07631
(201) 227-0881      Phone
(201) 227-0882      Facsimile
mcohen@YourLitigationTeam.com

Dated:   March 12, 2018

**CERTIFICATION PURSUANT TO R:4:5-1**

The undersigned hereby certifies that, to his knowledge, the matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration proceeding. Further, no such other action is currently contemplated. The undersigned is presently unaware of any other party who should be joined in this litigation; however, if discovery reveals that there is another responsible party, it will be necessary to amend the Complaint to name this party as a Defendant.

LAW OFFICES OF MICHAEL M. COHEN
Attorneys for Plaintiff

MICHAEL M. COHEN

Dated:      March 12, 2018
            Englewood, New Jersey

# EXHIBIT A

Shipper(if agents) (complete name and address)
FOSHAN GREENCITY BUILDING MATERIALS CO.,LIMITED
ROOM 1103, HANG SENG MONGKOK BUILDI
NG,677 NATHAN ROAD,MONGKOK,KOWLOON
HONG KONG

Bill of Lading No
SHASEA48696

栢城斯浩航物流有限公司
Parisi Grand Smooth Logistics Ltd

Consignee (complete name and address)
HERODS STONE DESIGN INC
480 TONNELLE AVE JERSEY CITY NJ
07307 TEL:201-420-6710
FAX:201-420-8787

BILL OF LADING

RECEIVED in apparent good order and condition except as otherwise noted the total number of containers or other packages or units enumerated below for transportation from the place of receipt to the place of delivery subject to the terms hereof.
One of the signed Bills of Lading must be surrendered duly endorsed in exchange for the Goods or delivery order   On presentation of this document (duly endorsed) to the Delivery Agent  by the Holder the rights and Liabilities arising in accordance with the terms here of shall (without prejudice to any rule of common law or statute rendering them binding on the Merchant) become binding in all respects between the Carrier and the Holder as though the contract evidenced hereby had been made between them.
IN WITNESS Where of this number of original Bills of Lading stated below all of toner and date one of which being accomplished the others to stand void.

Notify party (complete name and address)
SAME AS CONSIGNEE

Ocean Vessel & Voy No.      V.0003E
DIHAO13

Local Vessel or Freecarriage by

Port of Loading
CHONGQING

Port of Discharge
LONG BEACH,CA

Place of Receipt
CHONGQING

Place of Delivery*
LONG BEACH,CA

Final destination (for the Merchant's reference)
LONG BEACH,CA

| MKS & NOS   CONTAINER NOS | NO. OF PKGS. | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT KGS | MEASUREMENT CBM |
|---|---|---|---|---|
| TTNU3373958 /FEX8177143 | /20'GP | /CY/CY | | |
| | | | | |
| N/M | 23 PACKAGES | SHIPPER'S LOAD & COUNT & SEAL S.T.C. : - MARBLE TILE | 27000.000 | 20.000 |

ON BOARD
PARISI GRAND SMOOTH LOGISTICS LTD

"FREIGHT COLLECT"

Total number of packages:  ONE(1X20'GP)  CONTAINER(S) ONLY

| Freight and charges | Prepaid | Collect |
|---|---|---|
| FREIGHT COLLECT AS ARRANGED | | |

FOR DELIVERY OF GOODS PLEASE APPLY TO:
GO FORWARD FREIGHT SERVICES
246 LYNCH STREET, SUITE 1-E
BROOKLYN, NY 11206
P: 212-444-1196 X 203
C: 347-978-1614 F: 718-676-2366

Signed on behalf of
PARISI GRAND SMOOTH LOGISTICS LTD
Number of Original B(s)/L
THREE (3)   Celine Hong

Payable at
DESTINATION
Shipper – Reference

栢城斯浩航物流有限公司
Parisi Grand Smooth Logistics Ltd

Total prepaid

Total collect

Place and date of Issue     SHANGHAI    APR 21,2016

On Board Date                          APR 21,2016

Seal(s) No.(s)

By

[illegible]

MEDITERRANEAN SHIPPING COMPANY S.A.

12-14 chemin Rieu - CH - 1208 GENEVA, Switzerland

website: www.msc.com SCAC Code: MSCU

SEA WAYBILL No. MSCUYS895277

NOT NEGOTIABLE - COPY

| | |
|---|---|
| NO. OF ORIGINAL B/L [illegible] | NO. OF RIDER PAGES |
| | 0 Zero |

SHIPPER
[illegible]

CONSIGNEE
[illegible]

NOTIFY PARTIES [illegible]
[illegible]

CARRIER'S AGENTS ENDORSEMENTS [illegible]
[illegible]

| VESSEL AND VOYAGE NO. | PORT OF LOADING | PLACE OF RECEIPT (Combined Transport ONLY - see Clause 1 & 5.2) |
|---|---|---|
| DIIAOYI - 0003F | CHONGQING | CHONGQING |
| BOOKING REF. / SHIPPER'S REF. | PORT OF DISCHARGE | PLACE OF DELIVERY (Combined Transport ONLY - see Clause 1 & 5.2) |
| 177CQHDM[illegible] | Long Beach, United States | XXXXXXXXXXXXXXXX |

PARTICULARS FURNISHED BY THE SHIPPER - NOT CHECKED BY CARRIER - CARRIER NOT RESPONSIBLE (see Clause 14)

| Container Numbers, Seal Numbers and Marks | Description of Packages and Goods (Continued on attached Bill of Lading Rider page(s), if applicable) | Gross Cargo Weight | Measurement |
|---|---|---|---|
| TTNU3373958<br>20 DRY VAN<br><br>Seal Number:<br>[illegible]<br>Tare Weight: 2,245 kgs.<br>Marks and Numbers: N/M | 23 Package(s) of MARBLE TILE<br><br>SCAC CODE: [illegible]<br>HBL AMS NO:SHASEA[illegible]<br><br><br>[illegible] HERODS STONE DESIGN INC<br>Total Items: 23 Total<br><br>Freight Collect | [illegible] kgs.<br><br><br><br><br><br><br><br>[illegible] kgs. | [illegible] cu. m<br><br><br><br><br><br><br><br>[illegible] cu. m |

FREIGHT & CHARGES [illegible]

| FREIGHT & CHARGES | BASIS | RATE | PREPAID | COLLECT |
|---|---|---|---|---|
| | | | | |

RECEIVED by the Carrier from the Shipper in apparent good order and condition [illegible]

[illegible]

IN WITNESS WHEREOF the Carrier, Master or their Agent has signed this Sea Waybill.

| DECLARED VALUE [illegible] | CARRIER'S RECEIPT [illegible] | SIGNED on behalf of the Carrier MSC Mediterranean Shipping Company S.A. |
|---|---|---|
| XXXXXXXXXXXXXX | 1 CNTR | by As Agent |
| PLACE AND DATE OF ISSUE | SHIPPED ON BOARD DATE | |
| [illegible] | 21-Apr-2016 | |

177 [illegible] A 133875125

# EXHIBIT B























# EXHIBIT C

